## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAQUINCEY A. WATSON,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:18-1718** |
| **v.** | : | **(JUDGE MANNION)** |
| **ROBERT MARSH,** | : | |
| **Respondent** | : | |

### <u>MEMORANDUM</u>

Petitioner, LaQuincey A. Watson, an inmate confined in the Benner State Correctional Institution, Bellefonte, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Dauphin County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

### I.   <u>Background</u>

The factual background, extracted from the Pennsylvania Superior Court's August 11, 2014 Memorandum Opinion, affirming Petitioner's conviction and sentence, is as follows:

> The trial court has set forth an extensive recitation of the underlying facts in its Opinion, which we adopt for the purpose of this appeal. <u>See</u> Trial Court Opinion, 10/28/13, at 1-12.

Relevantly, Detective James Glucksman ("Glucksman") worked as a police officer for eleven years and investigated between 600 and 1,000 burglaries, including serial burglary cases. Glucksman became involved with this case on March 5, 2010, when he was ordered to investigate the third burglary in Lower Paxton Township that weekend.[1] Glucksman determined that a witness had encountered the burglar and, based on the information and description provided, assembled a photo array for review by the witness, which ultimately led to the identification of Watson as a suspect. The burglaries that occurred in Glucksman's patrol zone, and surrounding areas, fit a pattern of burglaries wherein the *modus operandi* involved parking a car in the home's driveway and kicking in a door in order to gain access during daylight hours. Watson was subsequently arrested and Glucksman obtained a search warrant for Watson's residence.

Glucksman searched for, *inter alia*, a pair of sneakers that had a tread pattern consistent with marks recovered from the door of a home that had been robbed. While conducting the search, Glucksman seized two pairs of sneakers matching the tread pattern and photographed a gun holster, cameras, jewelry, laptop, coins, and radios. Glucksman subsequently received an anonymous tip that Watson's girlfriend had removed the photographed items from Watson's residence and was tempting to sell them on the internet. Glucksman contacted her, and, after observing the items in her apartment and confirming they were in fact reported as stolen, seized the items with her consent. Watson was charged with more than twenty crimes, predominantly burglaries, which took place over the course of approximately four months (November 2009-March 2010) in four counties.[2] The stolen items included household electronics, jewelry, collectible coins, and other cash or coins. Watson moved

---

[1] See 18 Pa.C.S.A. §§3502, 3701(a)(1)(ii), 3925, 6105(a)(1).

[2] The Commonwealth dropped eleven of the charges, leaving Watson to face charges for 5 burglaries that occurred in Dauphin County, 5 burglaries that occurred in York County, 5 burglaries that occurred in Cumberland County, and 2 burglaries that occurred in Lancaster County.

to suppress this evidence at one of the pretrial hearings, but his Motion was denied.

Watson also filed a Motion to Sever Charges, a Motion for Severance of Charges  Or, In The Alternative, A Bifurcated Trial ("Motion for Severance"), and  a Motion to Exclude Admission of Cellular Telephone Tower "Ping" Evidence and Accompanying Expert Testimony ("Motion to Exclude"), all of which were denied.[3]

Watson's charges were consolidated, and a jury trial was held in Dauphin County in September 2012. Watson was found guilty of the abovementioned crimes and acquitted on three counts of burglary. On December 17, 2012, Watson was sentenced to an aggregate sentence of 33½-67 years in prison. Watson filed a timely Post-Sentence Motion. On April 23, 2012, the trial court granted Watson's Post-Sentence Motion and issued an Amended Sentencing Order, stating that Watson was to serve 22-44½ years in prison. Watson filed a timely Notice of Appeal and a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

On appeal, Watson raises the following questions for our review:

I. Whether the trial court erred in denying [Watson's] [M]otion to [S]uppress physical evidence and identification of evidence where the search exceeded the scope of the warrant and the plain view exception was [] inapplicable in violation of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

II. Whether the trial court erred in denying [Watson's] [P]retrial [M]otion for [S]everance where the crimes were not part of a single criminal episode?

III. Whether the trial court erred in denying [Watson's] [P]retrial [M]otion to [E]xclude Commonwealth's [C]ellular [T]elephone

---

[3] The other Motions made in Watson's Omnibus and Amended Omnibus Pretrial Motions are not relevant to this appeal.

[T]ower "[P]ing" [E]vidence and [A]ccompanying [E]xpert [T]estimony where such is not generally accepted in the field of cell phone technology?

IV. Whether the trial court erred in denying [Watson's] [M]otions for [M]istrial after the Commonwealth's witness repeatedly violated a pre[]trial order forbidding opinion testimony regarding the cellular phone records?

Brief for Appellant at 8.

(Doc. 10 at 92, Commonwealth v. Watson, No. 900 MDA 2013, 2014 WL 10803077 (Pa. Super. filed March 21, 2014) (unpublished memorandum). By Memorandum Opinion dated August 11, 2014, the Superior Court affirmed Petitioner's judgment and sentence. Id. By Order dated February 25, 2015, the Pennsylvania Supreme Court denied Watson's petition for allowance of appeal. (Doc. 10 at 182, Commonwealth v. Watson, No. 651 MAL 2014, 112 A.3d 652 (Pa. 2015) (Table).

On April 25, 2016, Watson filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§9541-9546 and on August 31, 2016, filed an amended counseled PCRA petition raising the following issues for relief:

1. Trial counsel rendered ineffective assistance for failing to request a Kloiber instruction on faulty identification testimony.

2. Trial counsel rendered ineffective assistance where he failed to request an accomplice-corrupt source jury charge where the testimony of Latoya Craighead qualified.

- 4 -

3. The Commonwealth violated <u>Brady</u> by failing to disclose Latoya Craighead's criminal record and any information regarding charges pending against her, and counsel was ineffective for failing to request this impeachment evidence.

4. Trial counsel rendered ineffective assistance when he failed to object to expert testimony provided by Jessica Sauder on the grounds it violated Petitioner's Sixth Amendment rights to confrontation enunciated by <u>Crawford</u>, <u>Melendez-Diaz</u> and <u>Bullcoming</u>.

5. Trial counsel rendered ineffective assistance when he failed to brief the trial court committed an error of law by admitting prior bad acts, and counsel failed to renew his objection when it occurred.

6. Trial counsel rendered ineffective assistance where he failed to object on the grounds the Commonwealth lacked jurisdiction to prosecute Petitioner on the Maryland offense.

7. Trial counsel rendered ineffective assistance when he failed to object where Petitioner's Constitutional rights to trial by an impartial jury were violated when the Commonwealth struck all African Americans during *voir dire*.

8. Trial counsel rendered ineffective assistance when he failed to object when initial counsel, Korey Leslie was allowed to testify at Petitioner's pretrial hearing where no colloquy was conducted to waive attorney client privilege.

9. Trial counsel rendered ineffective assistance when he failed to argue on direct appeal Petitioner's sentence was illegal and unconstitutional in light of <u>Alleyne</u>.

(Doc. 10 at 361-362). By Order dated March 30, 2017, the PCRA court dismissed Watson's PCRA petition for the reasons set forth in their Memorandum Order dated November 17, 2016. (Doc. 10 at 375, 400).

On April 20, 2017 Watson filed a notice of appeal from the dismissal of his PCRA petition to the Pennsylvania Superior Court. (Doc. 10 at 410). He raised the following issues for review:

> 1. Trial counsel was ineffective for failing to object to pretrial counsel, Korey Leslie, testifying at the Appellant's pretrial hearing when there was no colloquy given to the Appellant waiving this attorney/client privilege.
>
> 2. Trial counsel was ineffective for failing to object to the Commonwealth striking all African American jurors in violation of Batson.
>
> 3. Trial counsel was ineffective for failing to request a Kloiber instruction on faulty identification testimony.
>
> 4. Trial counsel was ineffective for failing to request an accomplice-corrupt source jury instruction where the testimony of Latoya Craighead qualified for such instruction.

(Doc. 10 at 474).

By Memorandum Opinion dated February 1, 2018, the Pennsylvania Superior Court affirmed the PCRA court's denial of Watson's PCRA petition. (Doc. 10 at 503, Commonwealth v. Watson, No. 687 MDA 2017, 2018 WL 652925 (Pa. Super. filed Feb 1, 2018) (unpublished memorandum).

By Order dated July 17, 2018, the Pennsylvania Supreme Court denied Watson's petition for allowance of appeal. Commonwealth v. Watson, No. 153 MAL 2018, 189 A.3d 388 (Pa. 2018) (Table).

On August 29, 2018, Petitioner filed the instant petition for writ of habeas corpus. (Doc. 1). He raises the following seven grounds for relief:

1. Trial counsel was ineffective for failing to request a Kloiber instruction.

2. Trial counsel was ineffective for failing to request a corrupt source charge in regards to the testimony of Latoya Craighead.

3. Collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to object to expert testimony provided by Jessica Sunder on the grounds it violated his sixth amendment rights to confrontation as enunciated by Crawford, Melendez-Diaz and Bullcoming.

4. Pretrial counsel was ineffective for testifying to confident[ial] information in violation of attorney client privilege.

5. Collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to argue on direct appeal that the trial court committed an error of law by admitting prior bad acts in which counsel failed to renew his objection when it occurred.

6. Petitioner's due process rights were violated when the state courts found cellular telephone tower pings were admissible evidence and collateral counsel was ineffective for failing to raise in the initial collateral review petition that trail counsel was ineffective for failing to move to suppress this evidence.

7. Collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to argue on direct review that Petitioner's sentence violated Alleyne.

(Doc. 2, Memorandum of Law).

## II. **Legal Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed

by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

Watson's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III.  **Discussion**

### A. **Exhaustion and Procedural Default**

Before considering the merits of Watson's grounds for relief, the Court must address Respondent's contention that four of the claims raised are unexhausted and procedurally defaulted. Specifically, Respondent asserts that Petitioner's third, fifth, sixth and seventh grounds raised are unexhausted and procedurally defaulted.  (Doc. 10 at 5-18).

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. §2254(b). Specifically, habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); Picard v. Connor, 404 U.S. 270, 275–76 (1971). The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. §2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. O'Sullivan, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); see also

- 10 -

Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard, 404 U.S. at 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Picard, 404 U.S. at 278; see also McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. See Brown v. Cuyler, 669 F.2d 155 (3d Cir. 1982); Zicarelli v. Gray, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. See Picard, 404 U.S. at 277; Brown, 669 F.2d at 158–61. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. §2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991)." McCandless, 172 F.3d at 260. To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror

would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

It is Respondent's position that Petitioner's arguments that (1) trial counsel was ineffective for failing to object to expert testimony provided by Jessica Sunder on the grounds it violated his sixth amendment rights to confrontation as enunciated by Crawford, Melendez-Diaz and Bullcoming; (2) Pretrial counsel was ineffective for testifying to confident[ial] information in violation of attorney client privilege; trial counsel was ineffective for failing to argue on direct appeal that the trial court committed an error of law by admitting prior bad acts in which counsel failed to renew his objection when it occurred; (3) trial counsel was ineffective for failing to move to suppress Petitioner's cellular telephone tower pings as admissible evidence; and (4) that trial counsel was ineffective for failing to argue on direct review that Petitioner's sentence violated Alleyne have never been presented to a state court, and, consequently, are procedurally defaulted.  (Doc. 10).  Petitioner argues that he can overcome the procedural default of this claim under the authority of Martinez v. Ryan, 566 U.S. 1 (2010), claiming that his PCRA counsel was ineffective because he failed to raise trial counsel's ineffectiveness for not raising these claims.  (Doc. 2).

Martinez v. Ryan, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, Martinez holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 9. To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," id. at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. Id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Workman v. Superintendent Albion SCI, 915 F.3d 928, 937-38 (3d Cir. 2019); see also Martinez, 566 U.S. at 13-14. A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that

post-conviction counsel's performance was deficient under the first prong of the Strickland v. Washington, 466 U.S. 668 (1984) standard. See Preston v. Sup't Graterford, SCI, 902 F.3d 365, 376 (3d Cir. 2018); see also Workman, 915 F.3d at 937–38. Satisfaction of the first Strickland prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. We will first address Respondent's argument concerning the exhaustion and procedural default of Petitioner's third, fifth, sixth and seventh claims.

### i. **Claim Three**

In Claim Three, Petitioner states that "collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to object to expert testimony provided by Jessica Sauder on the grounds that it violated his Sixth Amendment rights to confrontation as enunciated by Crawford, Melendez-Diaz and Bullcoming." (Doc. 2 at 10). Specifically, Petitioner claims that "the analyst who created them did not testify and Sauder specifically testified the historical cell phone data used in this case would be more suitably testified to by a custodial records employee, not her." Id. at 11.

- 15 -

Petitioner states that "Sauder's testimony encompassed how cell phone towers work indicating it provides coverage of three (3) miles which ultimately can place a cell phone user of a specific number in an approximate location" and that "to heighten this testimony, hence prejudicing Petitioner, the Commonwealth admitted into evidence, Exhibits 1 & 2 consisting of cell tower locations and calls allegedly made by Petitioner" and "Detective Glucksman was able to utilize these records to place Petitioner in the burglarized area." Id. Petitioner claims that although "the Commonwealth continuously maintained these records were kept in the regular course of business," Petitioner claims that "the analyst who created them did not testify" and "this document was made in aid of a police investigation ranks of testimonial, resulted in this conviction without confrontation," in violation of Bullcoming. Id.

In support of his argument that trial counsel was ineffective for failing to object to expert testimony provided by Jessica Sauder on the grounds that it violated his Sixth Amendment rights to confrontation, Petitioner relies on the following Supreme Court cases: Crawford v. Washington, 541 U.S. 36 (2004), Bullcoming v. New Mexico, —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), and Melendez–Diaz v. Massachusetts, 557 U.S. 305 (2009).

Having thoroughly reviewed the three decisions Petitioner cited—Crawford, Bullcoming, and Melendez–Diaz, this Court holds that Watson's Sixth Amendment confrontation rights have not been violated by the Government's failure to call the "analyst" who created the historical cell phone data.

In Crawford, the Supreme Court held that a criminal defendant's Sixth Amendment confrontation rights are violated if testimonial statements of absent witnesses are admitted into evidence, unless it is established that the absent witness is unavailable "and the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59. Statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial. See id; see also Melendez–Diaz v. Massachusetts, 557 U.S. at 311.

In Bullcoming, the Supreme Court overturned a defendant's conviction of driving while intoxicated. Bullcoming, 131 S.Ct. at 2710. Specifically, the Court applied Crawford in holding that prosecutors' failure to call the analyst who signed a lab report certifying that the defendant's blood alcohol content was above the legal limit violated the defendant's Sixth Amendment confrontation rights because the lab report amounted to testimonial evidence. Bullcoming, 131 S.Ct. at 2717. The Court noted that although

another analyst who was familiar with the lab's testing procedures provided live testimony, such live testimony was insufficient to comply with the requirements of the Sixth Amendment because the prosecution failed to produce the live testimony of the actual analyst who prepared the report. Id.

In Melendez–Diaz, a defendant was charged with distributing and trafficking cocaine. The prosecution placed into evidence notarized analyst reports showing that the substance seized by the police was, in fact, cocaine, but did not present the live testimony of the analysts who authored the reports. Melendez–Diaz, 557 U.S. at 308. The Supreme Court held that the failure to present the analysts' live testimony violated the defendant's confrontation rights because the reports were testimonial, as they had been made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 311.

The instant case is distinguishable from the three cases cited by Watson. The overarching principal in Crawford and its progeny is that a defendant's confrontation rights are implicated only when out-of-court testimonial statements of a non-testifying declarant are admitted into evidence. Here, no statement of the individual who created the historical cell phone data was admitted into evidence. Furthermore, when expert witness

- 18 -

Sauder was asked if the purpose of historical cell phone data was to pinpoint where a call was placed from, a question beyond the realm of her cell phone tower expertise, she responded "I am not sure if it is kept for that exact purpose. That would be more of a custodial records testify. I think we are mandated to keep records for a certain amount of time by the FCC but I can't testify on what that is" (Doc. 10 at 609, N.T. Pretrial, 9/10/12 at 53-54).

Finally, the record reveals that Petitioner's counsel stated on the record that he had no objection to Ms. Sauder being tendered as an expert in cell phone technology and clarified that the evidence he wanted to be excluded was the expert testimony relative to where any phone was located at a time when a call was placed. (N.T. Pretrial, 9/10/12 at 66–67). The Commonwealth stated that it planned to have Ms. Sauder testify to essentially the same facts presented at the pretrial hearing, and, more specifically, the technological functions of the cellular phones and towers and that it did not intend to call Ms. Sauder to render an expert opinion as to the exact location of a person because a cell phone call was made at a certain time or date, and utilizing a particular cell tower because it was the closest cell tower. (N.T. Pretrial, 9/10/12 at 67–71). Thus, the Court finds no violation of the Confrontation clause and, as such, counsel was under no obligation to make a meritless objection to expert testimony based on the Confrontation

clause. Consequently, the underlying, otherwise defaulted, ineffective assistance of counsel claim does not meet the "some merit" threshold, and Martinez is unavailable to excuse Watson's procedural default of this claim.

To the extent that Petitioner attempts to establish cause for his default by claiming that collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to object to expert testimony provided by Jessica Sauder, the narrow exception articulated in Martinez only applies to allegations concerning trial counsel's ineffectiveness, not claims alleging the ineffectiveness of appellate counsel or PCRA counsel. Davila v. Davis, 137 S. Ct. 2058, 2063 (2017) (declining to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel or PCRA counsel).

### ii.  Claim Five

Petitioner claims that "collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to argue on direct appeal that the court committed an error of law by admitting prior bad acts in which counsel failed to renew his objection when it occurred." (Doc. 2 at 13). Specifically, Petitioner states that "counsel did not renew his objection when the Adams

County incident was introduced," and "although the trial court suggests the probative value outweighed the prejudicial impact, the charging document holds the opposite; petitioner was charged numerously for the same crime on different occasions and the Commonwealth paraded witness after witness testifying to identical events." Id. at 14. This claim is procedurally defaulted. While Watson brought a state law claim challenging the admission of prior bad acts evidence, he did not "fairly present" the federal due process claim to the state courts. He claims, however, that his ineffective assistance of counsel for failing to object to the admission of bad acts is "a substantial one and review is appropriate under <u>Martinez</u>." The Court finds otherwise.

The Superior Court, adopting the trial court's reasoning as its own, addressed this evidentiary challenge only as a state law claim under the Pennsylvania Rules of Evidence and Pennsylvania state court decisions as follows:

> The fifth and final issue raised on appeal is that this Court erred by denying Appellant's pretrial Motion *In Limine* to preclude the Commonwealth from introducing evidence of Appellant's prior bad acts during its case in chief. In his Motion and at the suppression hearings Appellant averred that the Commonwealth had notified Appellant of its intent to present evidence of the facts underlying a December 7, 2009 burglary in which he pleaded nolo contendere. In his Motion, Appellant argued that such evidence should not be introduced pursuant to Pa.R.E. 404(b) because the introduction of his prior criminal record would be more prejudicial than probative. Appellant cited the case of Commonwealth v. Lockuff [813 A.2d 857 (Pa. Super. 2002)] to

assert that Appellant's conduct in the Adams County incident is not so distinctive to be viewed as a signature of a perpetrator. Appellant requested that the Court exclude such evidence from trial.

In its Answer to Appellant's Motion, the Commonwealth specified that it would seek to introduce facts underlying Appellant's Adams County burglary conviction to show that it was part of a common plan of burglarizing homes in Central Pennsylvania and to prove his identity as the perpetrator of the scheme.

Appellant pleaded *nolo contendere* to a burglary charge brought in Adams County relating to an incident which occurred on December 7, 2009. During the first suppression hearing, the Commonwealth made a proffer to this Court as to why the facts underlying the Adams County case were relevant and admissible as part of the Commonwealth's case in chief in Dauphin County.[4] (N.T. Pretrial, 6/28/12 at 81–82). The Commonwealth's position was that the underlying facts of the Adams County incident were admissible under the exception provided in Pa.R.E. 404(b) to prove identity and *modus operendi*. (N.T. Pretrial, 6/28/12 at 82). The Commonwealth argued that it would support its position by having witnesses who were part of the Adams County case testify to Watson's identity, the red truck he fled the scene in, how the owner of the truck permitted Watson to use it, how the truck is connected to other burglaries, how, chronologically, the burglary occurred within the string of burglaries that resulted in the instant charges, and how the manner in which he broke into the victim's house was very similar to several of the other burglaries. (Id.; N.T. Pretrial, 9/10/12 at 8–9).

Appellant's position before this Court is that for Rule 404(b) to apply and permit the evidence to be admitted to show identity and common scheme or plan, the facts must establish that the circumstances are so distinctive and nearly identical as to become a signature of a perpetrator. (N.T. Pretrial 6/28/12 at 82–

---

[4] The Commonwealth agreed on the record that because he pleaded *nolo contendere*, evidence of the conviction itself is inadmissible. (N.T. Pretrial, 6/28/12 at 81; N.T. Pretrial, 9/10/12 at 7-8).

83). Appellant cited <u>Lockcuff</u> to argue that some of the similarities that the Commonwealth is relying upon, such as kicking in a door to gain access to a house are not very distinctive because there are only a few ways to break into a house— through a window or a door. (<u>Id.</u>) Appellant added that the Adams County break in occurred through a garage door when other residences were entered through a front or back door, that the red truck was not used in all the charged burglaries, there were not eyewitnesses at each house, and he did not always flee the scene. (N.T. Pretrial 6/28/12 at 85–86; N.T. Pretrial, 9/10/12 at 11–12.

The Superior Court in the case of Commonwealth v. Weakley, [972 A.2d 1182, 1188-89 (Pa. Super. 2009)] provided a clear recitation of the analysis to be undertaken when a challenge concerning the admissibility of evidence, specifically evidence of other crimes or bad acts by a defendant is asserted on appeal:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact. Commonwealth v. Reid, 571 Pa. 1, 34, 811 A.2d 530, 550 (2002) (citations omitted). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Commonwealth v. Weakley, 972 A.2d 1182, 1188–89 (Pa.Super.2009) (internal citations and quotations omitted).

Jurisprudence regarding the admission of other crimes and bad acts is as follows:

> Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime *solely* to show his bad character and his propensity for committing criminal acts [See Pa.R.E. 404(b)(1)]. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. These other purposes include, inter alia, proving the identity of the person charged with the commission of the crime on trial. Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. Required, therefore, "is such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others."
>
> In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes. Id.

Additionally, when prior bad act evidence is admitted against a defendant to prove something aside from action in conformity therewith, the defendant is entitled to an appropriate limiting instruction. Commonwealth v. Henkel, 2007 PA Super 333, 938 A.2d 433, 444 (Pa.Super.2007) citing Commonwealth v. Hutchinson, 571 Pa. 45, 811 A.2d 556, 561 (2002); Commonwealth v. Billa, 521 Pa. 168, 555 A.2d 835, 842 (1989).

Upon examination of the way in which the burglaries for which Appellant was being tried were perpetrated, a clear pattern emerged. The burglaries took place at residences during daylight hours from roughly mid-morning until noon. The perpetrator entered the residence by kicking in a door whether it be back, front or garage door, and the items stolen were TVs, small electronics, jewelry and coins.

The Commonwealth represented to this Court that it intended to present witnesses involved with the Adams County incident that caught Appellant in the act of burglarizing a house, during daylight hours, where the victim came face to face with the perpetrator. A strange vehicle was in the driveway, a garage door had been kicked in and a TV lay in the garage. Appellant fled the scene in a red pickup truck that he later abandoned. Other evidence proffered was the testimony of a State Police Officer who was stationed out of the Gettysburg Barracks and determined that the red pickup truck belonged to Appellant's girlfriend Angela Greene. The Commonwealth also intended to present the testimony of Ms. Green that verified the truck was bought for the use of Appellant. Appellant was unable to explain to the State Police why the truck was abandoned; he said it had been stolen but never made a report or claimed it. Additionally, the Commonwealth planned to present testimony that showed usage of Appellant's cellular phone at the time of the Adams County incident and in the same vicinity.

Even though Appellant pointed out that some of the burglaries involved two other cars, a gold car and a gray car, the Commonwealth argued that the method by which the burglaries were perpetrated was the same and evidence would be presented to link Appellant to the use of those cars through other girlfriends.

This Court found the evidence sought to be admitted was overwhelmingly probative. The facts of the Adams County incident fit within the template that had emerged from the other charged burglaries. Coupled with eyewitnesses being able to testify to a physical description, the vehicle which was common to other burglaries and the link between Appellant and the vehicle

supports this Court's finding. At the pretrial hearing, Detective Glucksman also testified to investigating a string of daylight residential burglaries because of an emerging pattern and Appellant was a suspect. (N.T. Pretrial, 6/28/12 at 91-95; C-Exh. 2).

When ruling upon Appellant's motion, this Court recognized the possible prejudicial impact of admitting the evidence of the facts underlying the Adams County case, however we found that the probative value of proving identity of the perpetrator and a common scheme or *modus operendi* present in the burglaries for which he was on trial outweighed any prejudice. To that point, the Court emphasized to the Commonwealth that there would be "no reference as to this Adams County episode that he was arrested charged or convicted of ..." the crime. (N.T. Pretrial, 9/10/12 at 12–13). Of further import in this case is this Court's explicit limiting instruction given to the jury prior to deliberation regarding the evidence presented about the Adams County incident. This Court explained that the evidence was presented to the jury for a very limited purpose, more specifically:

> This evidence is for the purpose of tending to show the type of conduct that this defendant may have been engaged in. This evidence must not be considered by you in any other way other than the purpose I just stated.
>
> You must not regard this evidence as showing the defendant is a person of bad character or criminal tendencies which you might be inclined to infer guilt. You can consider that testimony if it sheds any light as to a link to the automobile in question in this case, I believe the Commonwealth's contention is it was the pickup truck and the method of operation that the defendant may have allegedly used in some of these other incidents. It is for that limited purpose. (N.T. Trial, 9/14/12 at 14–15).

This Court properly exercised its discretion by admitting evidence of the factual basis underlying the Adams County

- 26 -

incident for the purpose of proving identity and method or *modus operendi* in the Dauphin County cases.

This Court concludes that Appellant's claims of error are without merit.

(Doc. 10 at 109-111, Commonwealth v. Watson, No. 900 MDA 2013, 2014 WL 10803077 (Pa. Super. filed March 21, 2014) (unpublished memorandum).

Generally, claims alleging state court error in the admission of evidence are not cognizable in a federal habeas proceeding. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence."). Rather, "[a] federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation." Id. "Accordingly, a reviewing court must examine the relative probative and prejudicial value of evidence to determine whether its admission violated defendant's right to a fair trial." Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989). To the extent Watson alleges a state evidentiary error, rather than a due process violation, his claim is non-cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Watson argues that the probative value of the evidence of his prior bad acts was outweighed by its prejudicial impact on the jury, leading to a

- 27 -

violation of due process. (Doc. 2 at 13). The trial court rejected this argument, finding not only that the evidence was admissible under Pa. R. Evid. 404(b), but also that it was "overwhelmingly probative" in proving the identity of the perpetrator and a common scheme *or modus operendi*. During the pretrial hearing and at trial, the trial judge explained that evidence of Watson's prior bad acts was not only relevant, but essential in determining a clear pattern of burglaries, and thus had probative value that outweighed any potential prejudice. The trial judge is given considerable deference in his or her evidentiary determinations, and this Court only reviews such determinations for federal due process violations. Keller, 251 F.3d at 416 n.2. "[I]n order to show that an evidentiary error of this type rose to the level of a due process violation," Carter must contend "that it was of such magnitude as to undermine the fundamental fair ness [sic] of the entire trial." Id. at 413 (citing McCandless, 172 F.3d at 262; Lesko, 881 F.2d at 51-52). Here, the admittance of the evidence does not rise to such a constitutional violation; Watson's prior bad acts, namely the Adams County burglary conviction was relevant to show that it was part of a common plan of burglarizing homes in Central Pennsylvania and to prove his identity as the perpetrator of the scheme. Therefore, without a showing that this evidence undermined the fundamental fairness of his trial, Watson claim is meritless. Accordingly, the

Court finds that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel for failing to renew his objection to the introduction of such evidence, lacks merit, and Martinez does not excuse this procedural default.

To the extent that Petitioner attempts to establish cause for his default by setting forth a layered ineffective assistance claim blaming PCRA counsel for failing to raise appellate counsel's ineffectiveness for failing to raise the issue of prior bad acts on appeal, the narrow exception articulated in Martinez only applies to allegations concerning trial counsel's ineffectiveness, not claims alleging the ineffectiveness of appellate counsel or PCRA counsel. Davila v. Davis, 137 S. Ct. 2058, 2063 (2017) (declining to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel or PCRA counsel).

### iii. Claim Six

Petitioner's Claim Six states that "Petitioner's due process rights were violated when the state courts found cellular telephone tower pings were admissible evidence and collateral counsel was ineffective for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to move to suppress this evidence." (Doc. 2 at 14). He also claims that

Petitioner claims that the police did not first obtain a warrant to review this information in violation of Riley v. California, 573 U.S. 373 (2014) and that "recently, the Supreme Court in Carpenter v. United States, 2018 U.S. Lexis 3844 held that, when the government accessed an accused cell-site location information, it invaded a reasonable expectation of privacy and thus, violates Fourth Amendment protection." (Doc. 2 at 15-16). Finally, Petitioner claims that he was "highly prejudiced as he was convicted on evidence that was admissible in violation of Frye and was illegally obtained in violation of his constitutional rights. Id.

Petitioner concedes that none of the issues in Claim Six have ever been presented to the state courts in terms of ineffective assistance of counsel claims and are procedurally defaulted, unless Petitioner can prove that the claims are "substantial," meaning that they have "some merit." Martinez v. Ryan, 566 U.S. at 14. He cannot.

Initially, with respect to Claim Six, the Court notes that trial counsel did move to suppress the cellphone ping evidence and the state courts held this issue meritless. (Doc. 10 at 92, Commonwealth v. Watson, No. 900 MDA 2013, 2014 WL 10803077 (Pa. Super. filed March 21, 2014) (unpublished memorandum). Thus, Petitioner's claim of ineffective assistance of counsel

for failure to move to suppress the telephone tower pings is meritless on its face.

To the extent that Petitioner argues that he was pursuing his direct appeal when Riley v. California, 573 U.S. 373 (2014)[5] was decided and "counsel should have petitioned the court for reconsideration based upon the Riley decision," (Doc. 2 at 15), and that collateral counsel was ineffective because he "did not raise this claim in Petitioner's initial collateral review petition," Id. at 16, Martinez only applies to allegations concerning trial counsel's ineffectiveness, not claims alleging the ineffectiveness of appellate counsel or PCRA counsel. Davila v. Davis, 137 S. Ct. 2058, 2063 (2017) (declining to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel or PCRA counsel). Thus, Petitioner's alleged ineffective assistance of counsel regarding his Riley claim remains procedurally defaulted.

The Court further observes that it was not until 2018—six years after Watson's trial—that the Supreme Court of the United States held that cell-site location information is generally protected under the Fourth Amendment and requires a warrant supported by probable cause. See generally

---

[5] In Riley, the Supreme Court determined that a warrantless search of a person's cell phone is presumptively unreasonable.

Carpenter v. United States, ⸺ U.S. ⸺, 138 S. Ct. 2206, 201 L.Ed.2d 507 (2018). It can hardly be said that Watson's trial counsel was deficient for failing to raise a Fourth Amendment suppression argument for a right that had yet to be established. To the extent that Petitioner does not rely on Carpenter to excuse the procedural default but raises it as a free standing claim that the Government's use of historical cell-site location information ("CSLI") violated his Fourth Amendment rights, Carpenter does not apply retroactively to cases on collateral review. United States v. Davis, No. 13-cr-28, 2019 WL 1584634, at *2 (M.D. Pa. April 12, 2019).

Petitioner's final claim is that trial counsel was ineffective for failing to object to the Commonwealth's expert witness and type of cellular phone evidence as it did not meet the Frye requirements for admissibility. This claim of trial counsel ineffective has not been presented to any state court.

On appeal, the Superior Court adopted the sound reasoning of the trial court who addressed Petitioner's Frye claim as a state evidentiary matter under Pennsylvania law as follows:

> Appellant's third and fourth issues raised on appeal both assert claims of error with respect to the admission of evidence relating to what it terms as cellular telephone "ping" evidence. First, Appellant contends that this Court erred by denying its pretrial motion to exclude such evidence and accompanying expert testimony. Appellant also claims that this Court erred by denying his motions for mistrial when a Commonwealth witness

"repeatedly violated a pretrial order forbidding opinion testimony regarding the cellular phone records."

Appellant's pretrial motion to have the cellular phone records evidence excluded from admission at trial is premised upon the argument that this type of evidence has not received general acceptance within the relevant scientific community as required by Frye v. United States, 293 F. 1013 (D.C.Cir.1923). He argues that pursuant to Rule of Evidence 703, the facts that an expert witness bases an opinion upon must be of a type reasonably relied upon by experts in the particular field, and the type of cellular phone evidence the Commonwealth planned to present at trial does not meet the Frye requirements for admissibility; therefore, it should have been excluded. Appellant also argued that to allow such evidence to be presented to a jury without the benefit of expert testimony to testify to the proximity of the cell phone to the cell tower would be more prejudicial than probative in violation of Rule of Evidence 403.

The Commonwealth responded to the pretrial motion by denying that cellular phone tower evidence has not received general acceptance in the relevant scientific community. Additionally, the Commonwealth argued that the evidence it planned to present is fact testimony, not expert testimony, about cell phone records to show when Mr. Watson's cell phone was used and which cell phone tower was utilized for the service, which testimony would not constitute an opinion. Based on this assertion, the Commonwealth argued that Frye is not implicated with respect to this testimony.

***** 

Pennsylvania Courts apply the abuse of discretion standard to a Court's determination of the admissibility of expert scientific testimony. Grady v. Frito–Lay, Inc., 576 Pa. 546, 839 A.2d 1038 (2003). The test that a court must apply in ruling upon the admissibility of expert scientific testimony was announced in Frye v. United States, 293 F. 1013 (D.C.Cir.1923) and requires that "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the

relevant scientific community." Grady v. Frito–Lay, Inc., 839 A.2d at 1043–44 (2003) citing Commonwealth v. Blasioli, 552 Pa. 149, 713 A.2d 1117, 1119 (1998). In Grady v. Frito–Lay, Inc., the Pennsylvania Supreme Court clearly emphasized that the Frye test continues to be the applicable test in determining the admissibility of expert scientific testimony.

As part of the pretrial proceedings in this matter, this Court held a Frye hearing to resolve Appellant's Motion and permitted counsel to present argument to address Appellant's position that the cellular phone historical data evidence is novel scientific evidence that does not pass the Frye test for admissibility. (N.T. Pretrial, 9/10/12 at 14–71).

*****

After considering all testimony and argument, this Court ruled that the cellular telephone technology to which Ms. Sauder testified was not "novel" science which should be excluded under the Frye standard. (N.T. Pretrial, 9/10/12 at 71). The Supreme has stated that "Frye is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving novel science. What constitutes novel scientific evidence has historically been decided on a case-by-case basis, and there is some fluidity in the analysis; indeed, science deemed novel at the outset may lose its novelty and become generally accepted in the scientific community at a later date, or the strength of the proponent's proffer may affect the Frye determination." Commonwealth v. Dengler, 586 Pa. 54, 69–70, 890 A.2d 372, 382 (2005) citing Commonwealth v. Delbridge, 580 Pa. 68, 859 A.2d 1254, 1260 (2004) (plurality opinion); See also Pa.R.E. 702 and Grady, 839 A.2d at 1044.

Review of the record clearly reveals that Ms. Sauder, with her ample education and experience, credibly confirmed that cellular telephone technology has been the same for at least 20 years. There was nothing presented in the testimony to dispute that the functioning of the cell phone in relation to the cell tower and the resulting data recorded by T–Mobile is novel in the cellular service provider community or the electronics community

generally. As this Court determined that Detective Glucksman was not going to testify as [an] expert or render an opinion about the precise location of Appellant or his cell phone when calls were made, he is merely a fact witness to which Rule of Evidence 702 would not apply. Therefore, this Court properly exercised its discretion in denying Appellant's Motion and admitting the evidence Appellant sought to exclude.

(Doc. 10 at 105-108, Commonwealth v. Watson, No. 900 MDA 2013, 2014 WL 10803077 (Pa. Super. filed March 21, 2014) (unpublished memorandum).

The purpose of a <u>Frye</u> hearing is only to determine whether expert testimony and evidence has gained general acceptance in the scientific community and is therefore admissible under Pennsylvania law. See Commonwealth v. Walker, 92 A.3d 766, 780 (Pa. 2014); Perez v. Graham, No. 13-CV-1428, 2014 WL 523409, at *9 (S.D.N.Y. Feb. 5, 2014), report and recommendation adopted, 2014 WL 805958 (S.D.N.Y. Feb. 28, 2014).

Petitioner's Claim Six, challenging the state court's finding that cellular telephone tower pings were admissible evidence, is a state evidentiary matter wholly separate from the question of whether the admission of such evidence violates the federal Constitution.

Generally, mere errors of state evidentiary law are not cognizable on habeas review. See 28 U.S.C. §2254(a); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited

to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)). For this claim to be cognizable in this habeas proceeding, Petitioner would have to demonstrate that his <u>Frye</u> hearing violated an identifiable constitutional right and deprived him of a "fundamentally fair trial." <u>See</u> Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)). Petitioner has done neither. Because Watson fails to identify any federal constitutional right that was violated during the trial court's <u>Frye</u> hearing, the alleged state-law error is not cognizable on federal habeas review. The state court's conclusion that the evidence was admissible is binding on this Court. Estelle v. McGuire, 502 U.S. at 67-68. The fact that this conclusion of state law is a subsidiary point in an overall ineffectiveness analysis does not make the conclusion any less binding. Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004). As such, counsel was not ineffective for failing to raise this meritless claim. Ross v. District Attorney, 672 F.3d 198, 221 n.9 (3d Cir. 2012). Accordingly, the Court finds that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel failure to move to suppress this evidence lacks merit, and <u>Martinez</u> does not excuse this procedural default.

### iv. __Claim Seven__

Petitioner claims that "collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to argue on direct review that Petitioner's sentence violates Alleyne v. United States, 570 U.S. 99 (2013)."[6] (Doc. 2 at 16). Specifically, Petitioner states that under Commonwealth v. Newman, 99 A.3d 86 (Pa. Super. 2014), he "was not required to preserve an issue relative to the legality of sentence to be entitled to retroactive application." He claims that "[he] was on direct appeal when Alleyne was decided," and "counsel was ineffective for failing to raise this claim on direct appeal and collateral counsel was ineffective for failing to raise this claim in Petitioner's PCRA petition." Id. at 17.

The Third Circuit has determined that Alleyne announced a "new rule of law," which under Supreme Court jurisprudence "generally applies to cases still on direct review" but will only apply in limited circumstances to cases in which the conviction is already finalized." United States v. Reyes, 755 F.3d 210, 212 (3d Cir. 2014). The Third Circuit has determined that

---

[6] In Alleyne, the Supreme Court of the United States determined that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Alleyne at 99.

Alleyne does not apply retroactively to cases on collateral review. Id. However, as Watson argues, his conviction had not yet become final when the Supreme Court issued its decision in Alleyne. See United States v. LaPrade, 2016 WL 7338416 (3d Cir. 2016) (finding Alleyne applicable where it was decided during the 90 day period in which defendant could have filed a petition for writ of certiorari in the United States Supreme Court), citing Griffith v. Kentucky, 479 U.S. 314, 321-22 ("[R]etroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued.").

On February 25, 2015, the Pennsylvania Supreme Court denied Watson's petition for allowance of appeal. (Doc. 10 at 182, Commonwealth v. Watson, No. 651 MAL 2014, 112 A.3d 652 (Pa. 2015) (Table). His conviction therefore did not become final until 90 days later, on May 26, 2015, when his time for seeking review by the United States Supreme Court expired. See U.S. Sup. Ct. Rule 13; see also Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) (judgment becomes final at the conclusion of direct review or the expiration of time for filing such review, including the time for filing a petition for writ of certiorari in the United States Supreme Court). The Supreme Court issued its decision in Alleyne on June 17, 2013, before Watson's time for filing a petition for certiorari with the Supreme Court had

expired. Since Petitioner's conviction was not yet final when the Supreme

Court issued its decision in Alleyne, he would have been able to seek relief

pursuant to its holding regardless of the fact that it has been determined not

retroactively applicable to cases on collateral review.

In this case, Watson did raise his Alleyne claim in his initial PCRA

petition, where it was denied for lack of merit as follows:

> The last allegation states that counsel was ineffective for failing
> to argue on direct appeal that defendant's sentence was illegal
> under the Alleyne case. This Court agrees with PCRA counsel
> that his claim lacks merit. This Court refers to the following
> exchange occurred during sentencing:
>
>> THE COURT:  Count 19 is the persons not to possess,
>> that's the firearm charge. That has a mandatory five
>> years, correct?
>>
>> MR. ZAWISKY[7]:  No, it's not a mandatory.
>>
>> THE COURT:  What is it?
>>
>> MR. ZAWISKY:  It is just five years.
>>
>> MR. DELP[8]:  It has 60 to 60 guidelines.
>>
>> THE COURT:  It's not a mandatory but it has a 60 to 60
>> guidelines.[9]

---

[7] Attorney for the Commonwealth.

[8] Defendant's trial counsel.

[9] Transcript of Proceedings, Sentencing Hearing, page 23, December 17,
2012. Defendant was sentenced on the firearms count of not less than 60
months nor more than 120 months.

(Doc. 10 at 374). Thus, the PCRA court dismissed Petitioner's <u>Alleyne</u> claim on the grounds that the trial court sentenced the Petitioner within the guidelines, not the mandatory minimum. Petitioner abandoned this claim on appeal to the Superior Court. (Doc. 10 at 503, <u>Commonwealth v. Watson</u>, 687 MDA 2017, 2018 WL 652925, at *3 (Pa. Super. 2018).

Acknowledging that the claim is procedurally defaulted, Petitioner now alleges a layered claim of ineffective assistance of counsel, stating that his "collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to argue on direct review that Petitioner's sentence violates <u>Alleyne</u>." (Doc. 2 at 16).

Generally, ineffective assistance of PCRA counsel cannot serve as cause to excuse the procedural default of the claim. See <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53 (1991) ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 554-55 (1987) (there is no constitutional right to counsel on state collateral review); <u>Cristin v. Brennan</u>, 281 F.3d 404, 420 (3d Cir. 2002) (ineffectiveness of PCRA counsel is not viable claim because there is no right to counsel on

PCRA review). Thus, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. Davila, 137 S. Ct. at 2062 (2017). Furthermore, Martinez would not be applicable to his layered claim of ineffective assistance of appellate counsel for failing to preserve the claim on direct appeal, as Martinez excuses the procedural default only of errors committed at the trial level, not errors committed on direct appeal. Davila, 137 S. Ct. at 2063. Consequently, the Court finds this issue meritless based on the PCRA court's decision and unable to be revived as an ineffective assistance of counsel claim under Martinez.

### B. Claims Adjudicated on the Merits

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on Watson to prove entitlement to the writ. *Id.*

Under 28 U.S.C. §2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The test for §2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374,

380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under §2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75–76 (quoting Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for §2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," §2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting §2254(e)(1)) (citing Miller–El v. Dretke, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the

record evidence at the time of the state court's adjudication. Cullen, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). Petitioner's three remaining ineffective assistant of counsel claims have been fully adjudicated on the merits during the state court proceedings and will be addressed below.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See* id. at 694. The Strickland test is conjunctive, and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687*;* Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)). Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether

the state court's decision involved an unreasonable application of <u>Strickland</u> or are based on an unreasonable determination of the facts. <u>See</u> Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, <u>see</u> Commonwealth v Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to <u>Strickland</u>, <u>see</u> Jacobs, 395 F.3d at 107 n.9.

### i. **Claim One**

Petitioner claims that trial counsel was ineffective for failing to request a <u>Kloiber</u> instruction pursuant to Commonwealth v. Kloiber, 106 A.2d 820 (1954).

In addressing Petitioner's claim, the Superior Court, in affirming the PCRA court's denial of relief, found the following:

> Watson argues trial counsel provided ineffective assistance when he failed to request a Kloiber instruction.
>
> > A <u>Kloiber</u> instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions.
>
> Commonwealth v. Sanders, 42 A.3d 325, 332 (Pa. Super. 2012) (citation and footnote omitted). <u>See</u> <u>also</u> Pa. SSJI (Crim) §4.07B Identification Testimony—Accuracy in Doubt.
>
> At trial, Pamela Heinbaugh testified Watson broke into her home and she identified him directly. <u>See</u> N.T., Jury Trial, 9/11/12, at

57–60, 67. But she also admitted that approximately five months after the burglary she was unable to identify Watson in a Pennsylvania State Police photo array. See id., at 66–67.[10] Trial counsel extensively cross-examined Heinbaugh about inconsistencies in her trial testimony and preliminary hearing testimony and about her failure to identify Watson in the photo array. See id., at 68–80.

But trial counsel did not request a Kloiber instruction. And such an instruction was clearly warranted, as Heinbaugh equivocated in her identification between the photo array and trial testimony.[11] Thus, this issue has arguable merit. We proceed to the prejudice prong.

Watson did not plead prejudice in his PCRA petition. See Amended PCRA Petition, filed 8/31/16, at ¶ 17. That alone is fatal to his claim. He did, however, assert prejudice in his brief. Even accepting that, Watson's entire argument on that prong is as follows: "Because it [i.e., the Kloiber instruction] was not [given to the jury], the Appellant suffered prejudice and counsel was ineffective." Appellant's Brief, at 17. How? Saying it does not make it so. "Claims of ineffective assistance of counsel are not self-proving [.]" Commonwealth v. Wharton, 811 A.2d 978, 986 (Pa. 2002) (citations omitted).

---

[10] On cross-examination, she explained the photo array provided to her "was a terrible copy." N.T., Jury Trial, 9/11/12, at 79.

[11] The Commonwealth maintains no Kloiber charge was necessary as Heinbaugh testified she had a clear opportunity to observe Watson. See Commonwealth's Brief, at 12-13 The Commonwealth cites cases for the proposition that "once the opportunity to observe is established it becomes defense counsel's cross-examination, not the court's Kloiber charge, which must highlight any problems with the quality of a witness's observation." Commonwealth v. Cleveland, 703 A.2d 1046, 1049 (Pa. Super. 1997). That is certainly correct. But we are not dealing with opportunity to observe here; we are dealing with equivocation in the two identifications. Heinbaugh identified Watson at trial, but not in the photo array. Cleveland is inapposite. See Pa. SSJI (Crim) §4.07B 2.

"In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Commonwealth v. Reed, 42 A.3d 314, 319 (Pa. Super. 2012) (internal quotation marks omitted; citations omitted). The PCRA "requires that the prejudice prong of an ineffectiveness claim be 'plead and prove[n] by a preponderance of the evidence.' " Commonwealth v. Lassiter, 722 A.2d 657, 663 n.8 (Pa. 1998) (opinion announcing the judgment of the court) (quoting 42 Pa.C.S.A. §9543(a) ) (emphasis and brackets in original). Watson's blunt conclusion in his brief does not establish a reasonable probability.

(Doc. 10 at 503, Commonwealth v. Watson, 687 MDA 2017, 2018 WL 652925, at *3 (Pa. Super., 2018).

The Superior Court's decision that Petitioner failed to alleged prejudice as a result of counsel's failure to request a <u>Kloiber</u> instruction under Pennsylvania law is a state law determination that is not subject to review by this Court. <u>See</u>, <u>e.g.</u>, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.' ") (quoting Estelle, 502 U.S at 67-68); <u>see</u> <u>also</u> Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010). For this reason alone Petitioner's claim that trial counsel was ineffective for not requesting a <u>Kloiber</u> instruction fails. <u>See</u>, <u>e.g.</u>, id. (since the federal habeas court was bound by the state court's determination that the instruction given

at his trial comported with state law, the petitioner cannot satisfy the Strickland standard).

The claim also fails because Petitioner has not met the burden imposed on him by AEDPA's standard of review at §2254(d)(1), which is the applicable provision that applies to this Court review of this claim. The Superior Court applied the correct Strickland analysis when it evaluated this claim. Thus, Petitioner cannot establish that the Superior Court's adjudication was "contrary to" Strickland. Williams, 529 U.S. at 406. Nor has Petitioner shown that the Superior Court's adjudication was an "unreasonable application of" Strickland. The Superior Court determined that Petitioner failed to show, prejudice under Strickland, as well as failed to show that had the trial counsel requested a Kloiber instruction for Pamela Heinbaugh's testimony, the outcome of the case would have been different.

Unlike other cases where courts have found failure to request a Kloiber instruction prejudicial, in this case, Ms. Heinbaugh's testimony was not the only evidence connecting the defendant to the case, as the PCRA court stated, "there were multiple witnesses over the course of the trial" and that "there was ample evidence presented to the jury to find the Defendant guilty." (Doc. 10 at 365). See Simmons, 647 A.2d at 570 (holding failure to request

<u>Kloiber</u> instruction was "clearly prejudicial" where the witness was "the only witness who tied the defendant to the scene").

Based on the above, Petitioner's claim that trial counsel was ineffective for not requesting a <u>Kloiber</u> instruction is denied because this Court is bound by the Superior Court's state law determination that Petitioner was not prejudiced by any lack of instruction and also because its decision withstands review under AEDPA at §2254(d)(1).

### ii. **Claim Two**

Petitioner claims that "trial counsel was ineffective for failing to request a corrupt source charge in regards to the testimony of Latoya Craighead." (Doc. 2 at 9). Specifically, he claims that Latoya Craighead should have been viewed as an accomplice and "charged and punished for the crimes in which Petitioner was charged." Id.

The PCRA court reviewed this claim and denied it, explaining the following:

> The next claim is counsel was ineffective for failure to request an accomplice-corrupt source jury instruction where the testimony of Latoya Craighead qualified for such instruction. Amended PCRA, paragraph 20. In support of this contention, Defendant relies on testimony from the pretrial hearing held in which Defendant's preliminary hearing counsel testified she believed that Ms. Craighead was facing charges of her own and that she had counsel to represent her. N.T. Pretrial Hearing 13. Again, Defendant relies on testimony from the pretrial hearing from Detective Glucksman testifying, in essence, that Ms. Craighead

was selling items on Facebook and did not want to get charged with stolen property. N.T. Pretrial Hearing 103-116. We find that there is no evidence to support that counsel was ineffective for failure to request an accomplice-corrupt source jury instruction.

"[I]t 'is well established that, in any case in which an accomplice implicates the defendant, the [judge] should instruct the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution.' Commonwealth v. Hanible, 612 Pa. 183, 30 A.3d 426, 462 (2011) (citation omitted). A corrupt-source instruction is warranted where sufficient evidence is presented as to whether the witness is an accomplice. Commonwealth v. Williams, 557 Pa. 207, 732 A.2d 1167, 1181 (1999). An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense. 18 Pa. C.S. §306(c)(1)." Commonwealth v. Treiber, 121 A.3d 435, 459 (Pa. 2015).

Instantly, Ms. Craighead was not Defendant's accomplice. Defendant mistakenly interprets Detective Glucksman's testimony at the preliminary hearing. Detective Glucksman indicated that Ms. Craighead was upset and did not believe that Defendant was capable of committing the crimes. N.T. Pretrial Hearing 115. However, Detective Glucksman also testified that Ms. Craighead consented to us [law enforcement] taking the stolen property. Id. at 116. Ms. Craighead was fully cooperative during the investigation and testified on behalf of the Commonwealth at Defendant's jury trial. N.T. Jury Trial September 12, 2012, 4-22. The record is devoid of any intent by Ms. Craighead to "promote or facilitate the commission of the offense." There was no evidence presented at trial from which the jury could have reasonably inferred that Ms. Craighead was Defendant's accomplice. Instead, the evidence shows that Ms. Craighead was cooperative and testified on behalf of the Commonwealth. As such, trial counsel properly refrained from objecting to the jury instructions as an accomplice-corrupt jury instruction was not warranted. Additionally, assuming arguendo that defendant was entitled to an accomplice-corrupt source jury instruction, Defendant set forth no facts or argument that would

> satisfy prong (3) in that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." There was ample evidence and testimony, from a number of witnesses that implicated the Defendant in the commission of these crimes. Even with the jury instruction, there is nothing in the record to suggest that the outcome would have been different. In sum, trial counsel cannot be found ineffective for failure to request an accomplice-corrupt jury instruction and an evidentiary hearing is not necessary.

(Doc. 10 at 365-367). In affirming the PCRA court's dismissal of this claim, the Superior Court found the following:

> Lastly, Watson argues trial counsel provided ineffective assistance when he failed to request a corrupt source charge in regards to the testimony of Watson's girlfriend, Latoya Craighead, who testified as a Commonwealth witness.

> Craighead testified Watson instructed her to go to his apartment and remove his possessions. See N.T., Jury Trial, 9/12/12, at 13–14. She went there and took "everything" out of his apartment, including "electronics." Id., at 14. She further testified Watson instructed her to try to sell two televisions and a radio. See id., at 17.

> Watson maintains Craighead was an accomplice. "A person is an accomplice of another person in the commission of an offense if ... with the intent of promoting or facilitating the commission of the offense, [s]he ... aids or agrees or attempts to aid such other person in planning or committing it [.]" 18 Pa.C.S.A. §306(c)(1)(ii). "An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference." Commonwealth v. Watts, 501 A.2d 1152, 1154 (Pa. Super. 1985) (citation omitted). See also Hanible, 30 A.3d at 462 ("The charge is warranted where the evidence is sufficient to present a jury question with respect to whether the Commonwealth's witness is an accomplice.") The motivation behind the instruction is that an

accomplice witness will implicate others to gain leniency. See Watts, 501 A.2d at 1154. The instruction can be found at Pa. SSJI (Crim) §4.01 Accomplice Testimony.

The Commonwealth never charged Craighead with any crime, nor was she facing charges. But the jury was unaware of this. From the jurors' perspective, her actions in removing "everything" from Watson's apartment and then her complying with his directive for her to try to sell two televisions and a radio, in the context of this case, permits a reasonable inference that she was an accomplice to the crime of receipt of stolen property.

The PCRA court relies on the fact that "Mrs. Craighead was cooperative and testified on behalf of the Commonwealth" to support its finding that Craighead was not an accomplice. PCRA Court Opinion, at 7. As does the Commonwealth. See Commonwealth's Brief, at 14 (stating Craighead "was fully cooperative with the investigation"). The witness's cooperation and testimony on the Commonwealth's behalf is the impetus behind the instruction. Accordingly, we find this issue has arguable merit. But is there prejudice?

Watson's argument founders, once more, on the prejudice prong. He did not plead prejudice in his PCRA petition. See Amended PCRA Petition, filed 8/31/16, at ¶ 20. As noted, by itself that is fatal to his claim. See 42 Pa.C.S.A. §9543(a). And even looking past the failure to plead, in his brief Watson merely claims, "the testimony of Mrs. Craighead was crucial to the Commonwealth's case" and then simply concludes he "suffered prejudice, as the outcome of the trial could have been different if the correct jury instruction was given." Appellant's Brief, at 19. Again, one cannot but wonder how, exactly?

As mentioned, "[t]o demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." Commonwealth v. Mason, 130 A.3d 601, 618 (Pa. 2015) (citations omitted). Watson's terse conclusion falls far short of this standard.

> Even if the jury disbelieved Craighead's testimony, the Commonwealth presented a plethora of evidence to establish beyond a reasonable doubt that Watson was the perpetrator of the burglaries and related crimes. For instance: Heinbaugh's identification of Watson at trial, see N.T., Jury Trial, 9/11/12, at 57–60, 67; Anthony Valenti's testimony of catching Watson trying to kick his home's door down, <u>see</u> N.T., Jury Trial, 9/11/12, at 106–107, 109; Detective James Glucksman's testimony, <u>see</u> N.T., Jury Trial, 9/11/12, at 126–191; and the testimony throughout trial concerning the technological ability to place Watson in close proximity to the burglaries through cellphone "pings."

(Doc. 10 at 503, Commonwealth v. Watson, 687 MDA 2017, 2018 WL 652925, at *3 (Pa.Super., 2018).

Considering the state court's well-reasoned analysis, we find that the state court's rejection of this claim does not amount to an unreasonable application of <u>Strickland</u>, nor was the state court's ruling based upon an unreasonable interpretation of the facts in light of the evidence of record. Because the PCRA court found that there was no evidence to present to the jury that Ms. Craighead was an accomplice of petitioner, they determined that Petitioner was not prejudiced by counsel's decision not to request a corrupt source jury instruction. However, the Superior Court found that even giving arguable merit to the claim, Petitioner failed to establish any prejudice in not providing a corrupt source jury instruction or that the outcome of the case would have been different with the instruction. This Court finds that the

state courts' analysis is a reasonable application of Strickland. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### iii.  **Claim Four**

Petitioner claims that "pretrial counsel was ineffective for testifying to confident[ial] information in violation of attorney client privilege." (Doc. 2 at 12). Specifically, Petitioner states that "initial counsel, Korey Leslie, was called to testify at Petitioner's pretrial hearing on June 28, 2012," and that "[d]uring this proceeding Leslie provided testimony concerning his strategy and matters discussed with Petitioner, protected by attorney client privilege." Id.

The Superior Court found this claim without merit based on the following:

> Watson first argues that Korey Leslie, Esquire, his preliminary hearing counsel, provided ineffective assistance by providing "confidential information" to the Commonwealth at a pretrial hearing. Appellant's Brief, at 12.
>
> Prior to trial, Watson filed a petition for writ of *habeas corpus*, alleging the Commonwealth failed to present a *prima facie* case at the preliminary hearing. Attorney Leslie testified at the hearing held on the habeas petition. Watson claims he never waived his attorney-client privilege.[12] And according to Watson, Attorney Leslie's testimony "provided the Commonwealth with information on how the Appellant was going to proceed during the trial" and that his testimony explicitly disclosed "what the trial strategy would be [.]" Id. In support of this argument, Watson provides a

---

[12] Watson's trial counsel lodged no objection to Attorney Leslie's testimony.

single citation to the notes of testimony. The record, however, does not support his assertions as to any revelation of trial strategy.

At the hearing, Attorney Leslie testified only as to the strategy he employed at the preliminary hearing. See N.T., Pre–Trial Hearing, 6/28/12, at 11–12. There were 45 witnesses at the preliminary hearing ready to testify for the Commonwealth. See id., at 10. The Commonwealth called Attorney Leslie as a witness to explain his reasoning behind waiving the requirement of the Commonwealth calling all 45 witnesses to testify. Attorney Leslie explained that "[u]p to that point there had only been maybe one or two identifications" and he "didn't want to run the risk of everyone getting on the stand and saying that they remembered him from somewhere." Id., at 12. At that stage of the proceedings, the defense, not surprisingly, was that Watson was not the perpetrator of the burglaries. See id., at 13, 23. So, to avoid potential identifications from the 45 witnesses assembled and ready to testify, Attorney Leslie entered into an agreement with the Commonwealth permitting them to proceed at the preliminary hearing without putting all of those witnesses on the stand. See id., at 15.

Attorney Leslie never disclosed anything about trial strategy. His testimony focused exclusively on the strategy employed at the preliminary hearing. See id., at 7–26. Thus, Watson's assertion he was prejudiced by Attorney Leslie's "reciting what the trial strategy would be" is simply baseless. Appellant's Brief, at 12.

(Doc. 10 at 503, Commonwealth v. Watson, 687 MDA 2017, 2018 WL 652925, at *3 (Pa.Super. 2018).

Thus, the Court finds that the state courts' review of Petitioner's Claim Four did not involve an unreasonable application of Strickland or was based on an unreasonable determination of the facts in light of the evidence. To the extent that Petitioner is attempting to argue that trial counsel should have

objected to the preliminary hearing counsel testifying at a pretrial hearing in regard to whether or not the Commonwealth established a *prima facie* case, the prejudicial prong under <u>Strickland</u> has not been satisfied. Thus, the Superior Court's decision, was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Consequently, Petitioner's Claim Four provides no basis for habeas relief and his petition for writ of habeas corpus will be denied.

## V.   <u>Certificate of Appealability</u>

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" <u>Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011)</u> (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel, 529 U.S. 473, 484 (2000)</u>.

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## VI.    Conclusion

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 14, 2022**
18-1718-01

- 58 -